Filed 5/20/22  In re S.L. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.L., a Person Coming Under the Juvenile Court Law. | H048652<br>(Santa Clara County<br>Super. Ct. No. 19JD025794) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.A.,<br><br>        Defendant and Appellant. | |

The juvenile court terminated dependency jurisdiction over three children of D.A. (father) and E.L. (mother) after about one year of family maintenance services and, as relevant here, awarded mother sole legal and physical custody of the youngest son, S.L. (minor).  Jurisdiction was based on the children suffering serious emotional damage as a result of the conduct of both parents related to an acrimonious divorce and custody dispute.  Father argues on appeal that the juvenile court erred by:  terminating jurisdiction despite evidence that minor was in a fragile emotional state; not protecting minor's right to attend and be heard at hearings; and not appointing separate counsel for the three children when a conflict of interest arose.  He also contends minor's trial counsel provided ineffective assistance.  Finding no prejudicial error, we will affirm the judgment.

# I.  JUVENILE COURT PROCEEDINGS

Mother and father have three children:  minor, born in 2009; Y.A., born in 2007; and A.A., born in 2006.  The parents were married in 2005, separated in 2011, and divorced in 2013.  Physical custody of the children shifted between the parents over the next several years, and each parent accused the other of physical abuse.

## A.  DEPENDENCY PETITION

The Santa Clara County Department of Family and Children's Services (Department) filed a juvenile dependency petition in May 2019 alleging all three children were suffering or were at substantial risk of suffering serious emotional damage as a result of the conduct of mother and father.  (Welf. & Inst. Code, § 300, subd. (c); unspecified statutory references are to this Code.)  As later amended, the petition alleged the children needed juvenile court intervention because mother verbally abused them "on a daily basis," including by swearing at them and threatening physical harm.  The petition alleged father had convinced Y.A. to install hidden cameras in mother's house to record the mother's behavior.  The petition alleged both parents disparaged one another in an attempt to alienate the children.  The parents also "expos[ed] the children to their eight-year highly contentious custody battle and their individual verbal and emotional abuse has already caused the children emotional damage."  The children were living with mother when the dependency proceedings were initiated.

## B.  DEPARTMENT REPORTS AND JURISDICTION HEARING

The Department prepared multiple reports and addenda in the six months between the filing of the petition and the jurisdiction hearing in November 2019.  The jurisdiction and disposition report noted the dependency proceedings were initiated as a result of a police investigation into a video posted on YouTube with footage apparently taken from a hidden camera Y.A. installed in mother's house.  Mother is recorded on the video yelling at and belittling the children.  A Department report states mother made the following comments in the video, among others:  " 'get over here before I slap in your

damn face,' " " 'I fucking hate your guts,' " and " 'I'm bout to beat the FUCK out of you if you don't stop.' " (Errors and capitalization in original.) Father "admitted to involving [Y.A.] with recording" mother. The report noted "it appears [father] instructed [Y.A.] to plant the camera in the house in order to manipulate the child custody hearings where [father] lost full custody of the children." The children were suffering from their parents' behavior. They "displayed additional signs of an emotional trauma through fighting with peers as well as fighting with their parents." The children were "experiencing conflicting emotions about their parents."

The addenda detailed the parents' progress in the months leading up to the jurisdiction hearing. Mother consistently took responsibility for her actions and participated in the services recommended by the Department to address "parenting, parent coaching, verbal abuse, and psychological health with the mother and children." Mother remained distrustful of father and blamed him for some of the children's poor behavior. Regarding father, the report noted that he seemed committed to taking "steps to resolve the concerns held by the Department," but had "limited insight to his role and contribution to the current case, and how his words, thoughts, actions and choices [were] continuing to impact the children." There was also a roughly two-month period during which father did not respond to repeated attempts by the assigned social worker to reach him.

As for the children, A.A. remained with mother throughout the proceedings and refused even to visit with father. Early in the proceedings, she engaged in bullying behaviors toward minor. But both her behavior and her emotional state improved over time. Y.A. acted out consistently throughout the proceedings, including getting in trouble at school, skipping school, and bullying minor. That bullying activity included an incident during which Y.A. cut off chunks of minor's hair (which was particularly significant in light of the cultural significance of hair in the family's Tongan heritage). Minor was severely emotionally impacted by both his parents' and his siblings' behavior.

3

Mother reported minor was consistently stressed and anxious. Minor reported feeling unsafe at home because of Y.A., and expressed interest in Y.A. having overnight visits with father to separate minor from Y.A.

Parents waived trial, admitted the petition allegations, and submitted to jurisdiction in November 2019. The court granted the Department's motion to continue the disposition hearing to give the Department more time to assess the possibility of placing Y.A. with father to separate him from minor.

## C. DEPARTMENT ADDENDA AND DISPOSITION HEARINGS

The Department prepared two addenda in preparation for the disposition hearing. The first noted Y.A. continued acting out and was going to be prescribed Adderal by his doctor. Mother remained engaged in the services facilitated by the Department, including individual therapy where she was learning to "move on from things and not carry that 'extra weight.' " Father had not yet enrolled into the services the Department recommended he complete prior to being considered for placement of Y.A. Father's visits with Y.A. and minor were positive. He met with each son separately for one hour, once a week.

The second addendum recounted an incident during which Y.A. "jabb[ed] a large kitchen knife toward[] minor" at mother's house. Y.A. reportedly expressed no remorse for the incident when confronted about it by mother. He claimed it was merely a joke. Minor told the social worker he did not want to live in the same house as Y.A. anymore.

The parties submitted to a disposition of family maintenance services and continued placement of minor and A.A. with mother in January 2020. As to Y.A., the juvenile court granted the Department's request for a further continuance to allow the Department to determine an alternative placement for Y.A. At the continued disposition hearing for Y.A. in March 2020, the juvenile court ordered Y.A. to be placed with a maternal aunt. After father took steps to engage with services recommended by the Department, the juvenile court placed Y.A. with father with family maintenance services.

## D. FAMILY MAINTENANCE PERIOD

The six-month review report filed in June 2020 noted progress by both parents and positive developments for A.A. and minor. Mother was employed, maintained consistent contact with the Department, and was engaged in individual therapy. Father had attended a nurturing parent seminar, was seeing an individual therapist through Veteran's Affairs, and had started attending a different parenting program. A.A. and minor were both healthy and doing well in school. Minor still struggled with anxiety, but mother engaged in healthy behaviors like daily bike rides to help him. The Department recommended the juvenile court terminate jurisdiction over A.A. and minor because the family had addressed the concerns that led to the dependency petition. A.A. and minor told the social worker they felt safe in mother's care. Mother had gained "parenting skills and understanding from the classes that she has attended in order to ensure her children's safety and well-being while in her care." Though father had been in only "sporadic and recent communication" with the Department and still had a limited ability to cooperatively parent with mother, he was engaging in services and had "made some progress to the best of his ability." The report further noted that minor and A.A. would remain eligible for individual therapy and additional services through their health insurance, even if jurisdiction was terminated.

An addendum filed in September 2020 noted that the parents and Department had agreed to allow minor to stay with father, with an agreement that he would return to mother's care after one month. Minor expressed a desire to have a " 'break from [his] mom.' " Minor had been misbehaving, and the parents blamed one another for the misbehavior. There was an incident before minor went to stay with his father in which minor and mother had a disagreement and minor left the house. Mother told the social worker she told minor to " 'leave and go and take space.' " Minor told the social worker he interpreted that as mother kicking him out, and confirmed that he sent father a text message stating that mother kicked him out.

5

Minor oscillated between expressing anger toward his father and father's girlfriend, and expressing a desire that his father gain custody over him. Minor confirmed with the social worker that mother did not physically abuse him, but complained that she cursed sometimes. Minor asked the social worker whether the parents could have joint custody. Minor acknowledged sending his father a text message threatening to overdose on pills, but stated it was a ploy to try to force his father to break up with his girlfriend. The Department continued to recommend termination of jurisdiction over minor and A.A., with legal and physical custody to mother and unsupervised visitation by father. The social worker acknowledged in the addendum that due to the family dynamics and history, the "parents will continue to have a volatile relationship as the father is not willing to co-parent and the mother does not trust the father." But jurisdiction was no longer necessary because the "parents and children [were] connected to services, resources[,] and are engaging in those services." In a separate report for Y.A., the Department recommended termination of jurisdiction with legal and physical custody to father and unsupervised visitation to mother.

### E. JURISDICTION TERMINATED

The juvenile court conducted a contested family maintenance review over three days in October 2020. All hearings were conducted remotely via video due to the Covid-19 pandemic. The children were not present at the first two sessions. Minor and Y.A. were present for the third session.

The assigned social worker testified as an expert in risk assessment, safety planning, child development, and provision of services. The social worker was very familiar with the family, having been assigned to the case about 10 months before the status review hearing. The social worker noted mother had engaged with the Department throughout the proceedings and had "done a lot of work on her case plan." Mother completed individual therapy through the Department and had enrolled in additional individual therapy on her own. She had started family therapy with minor. The social

6

worker opined that mother's parenting ability "most definitely ha[d] improved." Mother was able to find resources for her family and to reach out for support when necessary. The social worker cited mother's recent decision to allow minor to stay with father for one month as demonstrating mother's growth and willingness to co-parent with father. The social worker contrasted mother's early behaviors of cursing and yelling at the children with healthier behaviors she learned during the dependency such as asking minor to "go and take space" when tensions arose.

The social worker noted that father had completed a parenting class. Father was reportedly attending individual therapy through Veteran's Affairs, but had repeatedly refused to sign a release to allow the social worker to contact the therapist. Father had attended no children and family team meetings for minor, whereas mother had attended all of them.

The social worker acknowledged that there had been two very recent referrals regarding alleged abuse by mother, which were based on minor's allegation that mother kicked him out of the house. One had already been closed due to insufficient information, and the other was still being investigated. Mother denied abusing the children, A.A. told the social worker there was no abuse occurring in the home, and minor told the social worker that he was not being physically abused by mother. The social worker stated that during home visits mother and minor were usually "very cordial," with minor sitting next to mother, hugging her, and kissing her. Regarding A.A.'s credibility, the social worker reported that she had found A.A. to be "very honest and forthcoming" throughout the proceedings.

The social worker acknowledged minor's recent emotional difficulties. She believed that minor was "caught up between both of the parents" and that it was "stressing him out." But the social worker believed that his mental health needs were being addressed by his therapist and family specialist. She noted that services could continue even if jurisdiction was terminated, including family therapy. The social worker

7

recommended that mother receive sole legal and physical custody of minor because mother had demonstrated to the Department that she had addressed the issues that led to jurisdiction and father had not demonstrated to the Department that he was able to meet the needs of his children.

Father testified that he wanted minor to remain with him and that minor had been thriving during the recent days minor was in his care. He stated minor had been attending all his virtual school classes and was working to make up missed school assignments.

The juvenile court followed the Department's recommendation to terminate jurisdiction as to all three children. Regarding custody, the court granted sole legal and physical custody over A.A. and minor to mother and granted sole legal and physical custody of Y.A. to father. For all three children, the court ordered unsupervised visitation to the non-custodial parent. The court found that father had not met his burden of showing by a preponderance of the evidence that the conditions which justified the initial assumption of jurisdiction still existed. Mother had completed all elements of her case plan other than the family therapy that was not available during part of the pandemic-related shelter in place period. The court credited the social worker's testimony about improvements in mother's parenting, as well as A.A.'s statements to the social worker that things were going well in mother's care. Regarding the incident during which minor claimed mother had kicked him out of the house, the court found that mother "allowed [minor] space during the incident," "allowed him to have time at his father's[,] and has been encouraging of that relationship." The court stated it was difficult to determine how much father had changed because he refused to sign a release to allow the social worker to talk to his individual therapist, noting father did not even "authorize the therapist to confirm participation but not go into the content" of sessions. Father and Y.A. were not enrolled in family therapy despite it being offered to them. The court also identified a "risk ... that the father [was] engaging in alienation against the mother with the boys" and

8

noted a correlation between minor's changed attitude toward mother and the increased frequency of his visits with father. Though the court found the possibility of alienation was not severe enough to keep the case open, it did consider the issue in reaching its placement decisions for minor and A.A.

We note that after the juvenile court explained its decision, the children's counsel informed the court that minor and Y.A. had at some point lost their connection to the virtual hearing and were no longer present. Father informed the court that the boys' computer had died; the boys then joined father at his computer. The boys expressed confusion, with Y.A. explaining that they missed part of the hearing. It is unfortunate here that the juvenile court elected not to "go back and read it all again" after apologizing "that we lost you and that you lost your connection." The court summarized its decision, but minor expressed displeasure with it, stating his mother's house was not a safe environment because she still yelled and cussed at him. Minor's counsel acknowledged minor's comments, expressed "concerns about why this is coming up right now from my client," and nonetheless confirmed the view that the court's orders were in minor's best interest.

## II.    DISCUSSION

### A. TERMINATION OF JURISDICTION

Father contends the juvenile court erred by concluding that continued jurisdiction was unnecessary. At the review hearing, the juvenile court was charged with determining whether continued supervision was necessary. (§ 364, subd. (c).) Termination is warranted unless a party "establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (*Ibid.*) Because father bore the burden of proof and the juvenile court concluded he did not meet that burden, on appeal the standard of review is whether undisputed evidence compels a finding in father's favor as a matter of law. (*In re N.O.* (2019) 31 Cal.App.5th 899, 925.) Under

9

that standard, it is not enough merely to cite competing evidence that was presented to the juvenile court; reversal is warranted only where the undisputed facts lead to but one conclusion. (*Id.* at pp. 925–926.)

The juvenile court here was presented with conflicting evidence, much of it supporting the finding that the conditions which supported jurisdiction no longer existed. As father acknowledges, the social worker testified that mother had improved her parenting skills; that minor and the other children would still have access to therapy through their health insurance even if the court terminated jurisdiction; that minor and mother appeared to get along well during the social worker's home visits; and that A.A., whom the social worker found credible and truthful, told the social worker she and minor were not being abused by mother. Further, the social worker reported in one of the status review addenda that minor told the social worker mother did not physically abuse him, though he did complain that she cursed at him at times. The trial court was entitled to credit all of that evidence.

In light of the foregoing, father cannot meet his burden to show that the trial court erred as a matter of law. Father points to various pieces of evidence he contends were undisputed, but many of those facts were actually in dispute. For example, he argues it is "undisputed that in the two months before dismissal, [minor] repeatedly reported Mother abused him" including reporting that mother had kicked minor out of the house. But minor's reports of verbal abuse were not the only evidence before the juvenile court on that issue. Mother denied abusing minor, A.A. corroborated mother's position, and the social worker testified that mother and minor appeared to get along well when the social worker made home visits. Mother told the social worker she never kicked minor out of the house and merely told him to "go take space" during an argument, which was a safe word that they had previously agreed upon to deescalate arguments. The juvenile court resolved that conflicting evidence, finding that "the incident from September does not show that [minor] is not safe with the mother. She allowed [minor] space during the

10

incident in September. She has allowed him to have time at his father's and has been encouraging of that relationship."

Father argues the juvenile court "failed to consider" certain evidence, including the fact that A.A. had been aligned with mother throughout the proceedings and that there were similarities between the escalating behaviors of minor and Y.A. We presume the juvenile court considered all competent evidence before it, absent a showing by a party that the court failed to do so. (See *Serrano v. Workmen's Compensation Appeals Bd.* (1971) 16 Cal.App.3d 787, 791 ["[I]n the absence of any contrary evidence we are entitled to presume that the trial court ... properly followed established law."].) Merely noting that the juvenile court did not discuss every piece of evidence when explaining its decision does not defeat that presumption. And the juvenile court was entitled to credit the social worker's testimony that A.A. had been honest. (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 254 ["We do not second-guess the court's credibility calls or reweigh the evidence."].)

We acknowledge it is undisputed that minor was in a fragile emotional state when the juvenile court dismissed jurisdiction. But the cause of that emotional state *was* disputed. Though father blames mother and contends she "could not cope" with minor's struggles, there were other sources of stress for minor including the dependency proceedings themselves and coming to terms with father having a new girlfriend. The court could continue jurisdiction only on a finding that conditions still existed to justify the initial assumption of jurisdiction. Here, those conditions had been daily verbal abuse and threats of violence by mother, and alienating actions by father that included surveillance by facilitating the installation of a secret camera in mother's home. The court heard evidence that those conditions had improved, and the social worker made clear that minor would still have access to therapy and other services even if jurisdiction terminated. The juvenile court did not err in terminating jurisdiction, even though it was apparent that minor would need ongoing help with his emotional state.

11

### B. Minor's Right to be Present

Father contends the juvenile court erred by failing to ensure that minor had been properly notified of his right to attend and participate in the family maintenance review hearings. Section 349 states that minors who are the subject of dependency petitions have a right to be present at juvenile court hearings, and subdivision (d) of that section provides that if a "minor is 10 years of age or older and he or she is not present at the hearing, the court shall determine whether the minor was properly notified of his or her right to attend the hearing and inquire whether the minor was given an opportunity to attend." But a "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "The purpose of this [forfeiture] rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*)

Father did not object in the juvenile court to minor's absence at the first two hearings. Had father done so, the juvenile court could have inquired about whether minor had been notified of his right and opportunity to attend the hearings, and any deficiency could have been timely corrected. Minor was also in father's care during the relevant proceedings, such that father was presumably aware of minor's whereabouts and could have raised the issue had he believed minor was unaware of his rights with respect to the hearings. Having failed to object, father forfeited the ability to challenge on appeal the juvenile court's compliance with section 349, subdivision (d).

Father contends arguments of his trial counsel during the hearing preserved the section 349 argument. He cites his trial counsel's arguments responding to hearsay objections during father's testimony. For instance, father's trial counsel argued minor's "views ought to be heard, and at least as of the last time we were present, a social worker hadn't specifically talked to him." But father's counsel never cited section 349, and we do not find the broad statement that minor's views "ought to be heard" sufficiently specific to preserve the procedural argument father now raises.

Father urges us to exercise our discretion to address the issue, notwithstanding any forfeiture. But our "discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.) Here, minor was represented by counsel at all three hearings, minor attended the third hearing (except for the portion during which he lost remote access), and minor was in father's custody throughout the three hearings at issue. We do not find the circumstances here present an exception for father's forfeiture.

## C. CONFLICT OF INTEREST

Father contends the trial court erred by not disqualifying the attorney who represented the three children, after an actual conflict developed between the interests of minor and A.A. Despite father's failure to object, an objection was not required to preserve a conflict of interest argument in this context. (See *People v. Bonin* (1989) 47 Cal.3d 808, 839.) Because the facts are undisputed, we review the issue de novo. (*In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1263 (*Zamer G.*).)

### 1. Background

A single attorney represented all three children. After the juvenile court heard testimony at the family maintenance review, counsel for each party addressed the court. Counsel for the children argued for each child separately. (We focus on statements about minor and A.A. because counsel's statements about Y.A. are not material to the issues here.) Regarding A.A., counsel agreed with the Department's recommendation and informed the court of A.A.'s stated interest to remain with mother. As for minor, counsel presented minor's "stated interest right now is that he wants to stay with his father." But counsel argued that the Department's recommendation that jurisdiction be terminated with sole legal and physical custody to mother was in minor's best interests. Counsel noted minor's stated preference for each parent's custody had gone back and forth throughout the proceedings. She stated a concern that father might be manipulating minor, and also noted that minor's escalating behaviors correlated temporally with him

13

spending increased time with father. Counsel acknowledged that neither parent was perfect, but contended that both had improved their parenting adequately to terminate jurisdiction. Mother had demonstrated a much higher level of engagement with service providers throughout the dependency proceedings, leaving counsel with no doubt she could continue to do so even without Department oversite. Father, by contrast, had been unwilling to consent to allow his service providers to speak with the social worker and "we don't really know what's happening in the home and what is being said to the children."

### 2. Analysis

Minors in dependency proceedings have a right to competent appointed counsel. (§§ 317, subd. (c); 317.5.) While counsel must "interview the child to determine the child's wishes and ... shall advise the court of the child's wishes" (§ 317, subd. (e)(2)), counsel's duty is to represent the child's best interests. (*Id.*, subd. (e)(1).) One attorney may represent multiple siblings so long as there is no actual conflict of interest among them. (*In re Celine R.* (2003) 31 Cal.4th 45, 58 (*Celine R.*); Cal. Rules of Court, rule 5.660(c)(1)(A) (Rule 5.660).) Separate attorneys must be appointed when an actual conflict develops between the siblings' interests or "if circumstances specific to the case—not just the potential for conflict that inheres in all multisibling dependency cases—present a reasonable likelihood an actual conflict will arise." (*Celine R.*, at p. 58.) An attorney appointed to represent multiple siblings has an "ongoing duty to evaluate the interests of each sibling and assess whether there is an actual conflict of interest" (Rule 5.660(c)(2)(A)), but the attorney need not withdraw from representing multiple siblings if "there is merely a reasonable likelihood that an actual conflict of interest will develop." (Rule 5.660(c)(2)(C).) Rule 5.660(c)(2)(B) lists circumstances which, "standing alone, do not necessarily demonstrate an actual conflict of interest," including situations where "siblings give different or contradictory accounts of the events, but the issues involved are not material to the case." (Rule 5.660(c)(2)(B)(vii).)

14

"The difficulty faced by counsel representing minors in dependency proceedings ... is that the paramount duty of counsel for minors is not zealously to advocate the *client's* objectives, but to advocate for what the *lawyer* believes to be in the client's best interests, even when the lawyer and the client disagree." (*Zamer G.*, *supra*, 153 Cal.App.4th at p. 1265.) We agree with the *Zamer G.* court's observation that a conflict of interest in this context "becomes 'actual' when an attorney's duties of loyalty, confidentiality, and zealous advocacy require the attorney to take or to refrain from taking some action to serve the 'best interests' of one minor client, but the attorney is unable to do so without violating a duty owed by the attorney to another client; or when the attorney is unable independently to evaluate the best interests of each minor client because of the minors' conflicting interests." (*Id.* at p. 1267.)

Here, minor's and A.A.'s accounts of mother's behavior in the period leading up to the family maintenance review hearing were contradictory: minor told the court that mother was still yelling and cursing at him, whereas A.A. told the social worker neither she nor minor was being abused by mother. As mother's verbal abuse was one of the original bases for jurisdiction, those contradictory accounts were material to the case. But differing accounts, standing alone, are not necessarily sufficient to show an actual conflict of interest between the representation of minor and A.A. Counsel was charged with representing each child's best interests, and counsel persuasively explained why it was in *both* A.A.'s and minor's best interests for mother to be granted sole legal and physical custody, notwithstanding minor's stated preference at the time of the hearing to remain with father. There is no evidence that counsel disregarded minor's stated interest or attempted to keep that preference from the court. To the contrary, minor's counsel was clear that her recommendation and minor's wishes were at odds. After considering all the evidence, counsel concluded that minor's and A.A.'s best interests were aligned, thus there was no actual conflict of interest.

15

Even assuming an actual conflict, any error was harmless. "A court should set aside a judgment due to error in not appointing separate counsel for a child or relieving conflicted counsel only if it finds a reasonable probability the outcome would have been different but for the error." (*Celine R.*, *supra*, 31 Cal.4th at p. 60.) Father argues separate counsel would have advocated to continue the dependency proceedings. But given the evidence supporting the juvenile court's decision, even if counsel had made such an argument, we find no reasonable probability the juvenile court would have accepted it and continued jurisdiction. On the issue of jurisdiction, as we have summarized, the juvenile court heard evidence supporting a finding that the conditions which initially justified jurisdiction had improved to the point that jurisdiction could be terminated. On the issue of placement, mother had been consistently engaged in services throughout the dependency proceedings, whereas father had demonstrated only limited engagement with services. Importantly, the juvenile court also had to consider the history of Y.A.'s aggression toward minor during periods when they lived at the same residence, including Y.A. cutting off minor's hair during one incident and threatening minor with a knife during another.

Because the same prejudice analysis would lead us to conclude that any deficiency in minor's counsel's performance was not prejudicial, father's ineffective assistance of counsel argument necessarily fails.[1]

### III.    DISPOSITION

The judgment is affirmed.

---

[1] Minor's motion requesting judicial notice of a family court order entered almost a year after the family maintenance review at issue in this appeal is denied as irrelevant. (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414, fn. 41.)

_____
Grover, J.

**WE CONCUR:**

_____
Greenwood, P. J.

_____
Lie, J.

H048652 - *In re S.L.; Santa Clara County DFCS v. D.A.*